

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

May 12, 2025

**BY ECF**
The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    *United States v. Mordechai Bar*, 24 Cr. 609 (CS)

Dear Judge Seibel:

    The Government respectfully submits this letter in advance of the sentencing of Mordechai Bar (the "defendant" or "Bar"), which is scheduled for May 19, 2025. The defendant pleaded guilty, pursuant to a plea agreement, to a one-count information (the "Information") charging him with diverting controlled substances, specifically, oxycodone, amphetamine, and alprazolam, between in or about January 2023 and in or about June 2024, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (b)(2). As set forth in the parties' plea agreement, the parties stipulated to a Guidelines range of 46 to 57 months' imprisonment but allowed for a two-level reduction following the successful completion of a safety-valve proffer, which the defendant completed on November 21, 2024. Accordingly, the Presentence Investigation Report ("PSR") calculates a Guidelines range of 37 to 46 months' imprisonment (the "Guidelines Range"). In accordance with the plea agreement and for the reasons explained below, the Government submits that a sentence within the Guidelines Range of 37 to 46 months' imprisonment would be sufficient but not greater than necessary to achieve the purposes of sentencing.

**I.    Background**

    From at least January 2023 through his arrest in June 2024, the defendant, a physician, misused his medical license to prescribe oxycodone, amphetamine, and alprazolam to patients without a legitimate medical purpose. PSR ¶ 15. The defendant sold these prescriptions on numerous occasions to a confidential source ("CS") in the name of the CS's father (the "Father") and "Nicole Gilbert," the undercover name of a law enforcement officer (the "UC"). Not only did Bar perform no physical examinations of the Father or the UC, but he did not even meet with them before prescribing controlled substances in their names. PSR ¶¶ 15-16. At appointments, which the CS attended alone, the defendant often issued prescriptions for controlled substances within a minute or two of meeting with the CS in the names of the Father and the UC, and the CS would often hand the defendant cash while the two were in the check-up room. In exchange, the defendant received cash payments of $100 per prescription issued in the name of the Father, and $200 per prescription written for the UC. PSR ¶ 24.

On May 30, 2024, the defendant was charged by complaint with one count of conspiracy to distribute and dispense narcotics and controlled substances, in violation of 21 U.S.C. § 846, and twelve counts of distribution and dispensation of narcotics and controlled substances, in violation of 21 U.S.C. § 841(a)(1). On October 22, 2024, he pleaded guilty to a one-count Information charging him with illicit distribution and dispensing of narcotics and controlled substances between in or about January 2023 and in or about June 2024.

## II.    The Guidelines Calculation

The plea agreement sets forth the Government's understanding of the appropriate offense level under the U.S.S.G. as of the date of that agreement, October 21, 2024. For Count One, the plea agreement calculated a total offense level of 23, including a three-level reduction pursuant to U.S.S.G. § 3E1.1 because the defendant accepted responsibility and entered a timely plea, and a two-level reduction pursuant to U.S.S.G. § 4C1.1 because the defendant had zero criminal history points. PSR ¶ 4(b)-(f). The plea agreement calculated zero criminal history points, placing the defendant in Criminal History Category I. PSR ¶ 4(g). With an offense level of 23 and a Criminal History Category I, the plea agreement calculated the Guidelines range to be 46 to 57 months' imprisonment. PSR ¶ 4(h). The parties further agreed that the defendant may seek an additional two-point reduction pursuant to U.S.S.G. § 2D1.1(b)(18), if he successfully completed a safety-valve proffer with the Government, pursuant to U.S.S.G. § 5C1.2. PSR ¶ 4(f), n.1.

The Probation Office calculates the applicable Guidelines Range consistent with the plea agreement and adds an additional two-level reduction for completing the safety valve proffer:

Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(7), the base offense level is 26 because the total amount of converted drug weight attributable to the defendant is 664.25 kilograms. PSR ¶ 29. Two levels are added pursuant to U.S.S.G. § 3B1.3 because the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense. PSR ¶ 32. Because the defendant truthfully provided, to the Government's satisfaction, all information and evidence concerning the offense, two levels are subtracted pursuant to U.S.S.G. § 5C1.2(1)-(5). PSR ¶ 30. Another two levels are subtracted pursuant to U.S.S.G. § 4C1.1(a) and (b) because the defendant qualifies as a zero-point offender. PSR ¶ 35.

The PSR applies a three-level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. PSR ¶¶ 36-37. Accordingly, the Probation Office calculates the applicable offense level at 21. PSR ¶ 38.

The Probation Office calculated zero criminal history points and so placed the defendant in Criminal History Category I. PSR ¶ 41.

A total offense level of 21 and Criminal History Category I yields an advisory Guidelines range of 37 to 46 months' imprisonment. PSR ¶ 78.

### III.  Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). It follows that district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 224 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### IV.  A Sentence at Within the Guidelines Range of 37 to 46 Months' Imprisonment is Appropriate

The Government respectfully submits that a sentence within the Guidelines Range of 37 to 46 months' imprisonment is sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing. As further discussed below, the Government submits that a sentence of imprisonment within the applicable Guidelines Range is necessary to reflect the seriousness of the defendant's conduct, to promote respect for the law, and to protect the public and ensure adequate deterrence.

*First*, a Guidelines sentence is necessary to reflect the nature and seriousness of the conduct, promote respect for the law, and provide just punishment for the offense. For more than a year, the defendant abused his training and license as a physician to sell prescriptions for a deadly combination of highly addictive drugs. Indeed, two of the drugs Bar was dealing—oxycodone and alprazolam—are particularly deadly when ingested together. In 2021, for instance, "nearly 14% of overdose deaths involving opioids also involved benzodiazepines" such as alprazolam.[1] The risk presented by combining those drugs stems from the fact that both drugs can cause sedation and suppress breathing, in addition to impairing cognitive functions.[2] It is unsurprising, therefore, that mixing two of the drugs that Bar prescribed increases rates of emergency department visits, hospital admissions, and even deaths.[3] But that did not matter to Bar. Despite the risks, Bar repeatedly sold these prescriptions for cash, without performing medical examinations or even speaking with or meeting these two purported patients. To cover his tracks, the defendant even papered his files with fake notes about physical examinations that he never conducted. This conduct shows a blatant disregard for the dangers that these drugs present, from a person who by his training and experience was entrusted to help, and not cause harm. This offense is undoubtedly serious, which favors a significant sentence of imprisonment.

*Second*, and relatedly, a Guidelines sentence is appropriate given the defendant's history and characteristics. As the defendant notes in his submission, he is an experienced physician. That he sold a deadly combination of highly addictive prescription drugs *despite* his extensive knowledge, training, and experience as a doctor shows his disregard for the consequences of his actions. That Bar is now 72 years old and has ceased practicing medicine should not shield him from facing further consequences for his actions. He spent month after month misusing his medical degree as a tool to peddle powerful opioids and other controlled substances. Indeed, the Guidelines already account for Bar's lack of prior criminal conduct by ascribing him a criminal history category of I and removing two levels from his offense level because he is a zero-point offender. While the Government acknowledges that his age is mitigating, particularly in view of the seriousness of the underlying conduct, this mitigator points at most towards a sentence at the lower end of the Guidelines Range, and certainly does not justify the time-served sentence he seeks.

*Finally*, a Guidelines sentence is necessary to ensure general deterrence. Opioid abuse is a scourge on society, impacting not only the users whose lives are frequently ruined by addiction, but harming innocent third parties whose families and entire communities are devastated by the collateral consequences of drug use. Doctors who because of their position can issue prescriptions for dangerous and addictive drugs must understand that their choice to misuse that power brings with it the prospect of a substantial term of imprisonment. By contrast, granting Bar's request for a time-served sentence would send the message that a physician near the end of his career can begin diverting drugs, knowing that if he is caught, he can simply agree to hang up his stethoscope and avoid prison. That cannot be the community's takeaway from this case. Accordingly, a Guidelines sentence will show Bar and others that drug dealing will not be tolerated, whether on

---

[1] Benzodiazepines and Opioids, NAT. INST. ON DRUG ABUSE (Nov. 7, 2022), https://nida.nih.gov/research-topics/opioids/benzodiazepines-opioids (last visited May 12, 2025).

[2] *Id.*

[3] *Id.*

the street corner or in the doctor's office.

## V.     Conclusion

For the reasons set forth above, the Court should impose a sentence within the Guidelines Range of 37 to 46 months' imprisonment.

                                                                                        Respectfully submitted,

                                                                                        JAY CLAYTON
                                                                                        United States Attorney

By: _____
                                                                              Jorja N. Knauer
                                                                               David A. Markewitz
                                                                               Assistant United States Attorneys
                                                                               (914) 993-1919 / 1920

cc:     Jason Swergold, Esq. (by email)